FILED

2008 Mar-31  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| SIERRA CLUB and ALABAMA ENVIRONMENTAL COUNCIL, INC., | ) ) ) ) | |
| **Plaintiffs** | ) ) | |
| v. | ) ) | **Case No. 3:02-cv-2279-VEH** |
| TENNESSEE VALLEY AUTHORITY, | ) ) ) | |
| **Defendant** | ) | |

## MEMORANDUM OPINION ON REMEDIATION
## (Docs. 157, 158, 160, 161)

### 1.    Background

Summary judgment on liability for CAA emission violations at TVA's Colbert

County, Alabama, plant ("Colbert") between January 3, 2000, and September 30, 2002,

was entered in favor of Sierra Club and against TVA by Order entered August 27,

2007.  (Doc. 153).  In that Order, TVA was directed to file a remediation plan to bring

the Colbert plant's units (1-4; 5) into compliance with the 20% opacity limit of the

Alabama State Implementation Plan ("SIP"), incorporated into TVA's Title V Clean

Air Act ("CAA"; "the Act") permit.  The Order also directed TVA to include in its

remediation plan "the relevant evidence the court must consider prior to the entry of

any remedial orders".  TVA's remediation plan was filed October 26, 2007.  (Doc.

157).  By Order entered November 28, 2007, the court discussed TVA's remediation

plan and some questions it had about the remediation plan.  (Doc.158).  TVA made a

responsive filing on December 4, 2007, describing the relevant evidence (witness

testimony and exhibits) the court should consider before the entry of any injunctive

relief.  (Doc.159).  Sierra Club filed responses to each of TVA's filings.  (Doc.160;

Doc.161).

The court has reviewed TVA's remediation plan and Sierra Club's Response.

After careful consideration of both filings, the legal authority cited in both filings, and

its own research, the court sets out below its opinion on a number of the remedial plan

contentions of the parties.   Sierra Club's response to the remediation plan is not

specifically discussed, but many of the points it makes are dealt with here.

A status conference has been set by separate Order.  The court writes about the

remediation plan filings now to narrow the legal issues, which in turn should narrow the

fact finding process the court may engage in hereafter.

At the status conference, the parties should be prepared to identify with

specificity which remaining issues require evidentiary hearing, and which can be

resolved as a matter of law.

2.      **TVA's Remediation Plan**[1]

The TVA remediation plan's core contentions are as follows:

I.      **TVA's current operations at the Colbert Plant are in accordance with the Plant's Title V permit and therefore no injunctive relief is warranted.**

In the beginning of its argument, TVA emphasizes that injunctive relief is forward-looking, and the court looks at current and future plant operation, not past operation.

Court's Response - Injunctive relief will be forward-looking.

> A.1 & A.2 - The violations which resulted in entry of summary judgment against TVA occurred when TVA subjectively believed its operation of the Colbert Plant complied with the SIP based on the 2% *de minimis* rule.

Court's Response - The court does not believe TVA's past state of mind is relevant to injunctive relief. This contention is also inconsistent with the assertion that injunctive relief should be forward-looking. If the relief is forward-looking, the violator's past "state of mind" would not be a consideration.

> B.      TVA's operation of the Colbert plant complies with
>         its Title V permit.

Court's Response - TVA's current Title V permit replaced the permits that were in effect during the violations period. TVA points to a provision in its Title V permit

---

[1] The court has tried to follow the TVA plan's format.

that governs "what TVA should do" when unexcused opacity exceeds 20%: take necessary corrective measure within 2 hours to bring emissions down to 20 % opacity. (Doc. 157-7.)

Court's Response - This is irrelevant.    The law of the case is that TVA's opacity emissions at the Colbert Plant may not exceed the 20% opacity SIP requirement unless each such emission falls within one of the SIP exceptions.  The SIP exemptions are " . . . startup, shutdown, load change, rate change or other short, intermittent periods of time upon terms approved by the Director and made part of the permit".  Ala. Admin. Code  r.335-3-4-.01(c).  TVA is permitted one (1) six minute interval per sixty minute period when its emissions opacity may exceed 20% but not greater than 40%.  Ala. Admin. Code   r.335-3-4-.01(b).   The Clean Air Act's mandate of continuous compliance requires TVA to meet the standards set out in the SIP.

Further, the law of this case is that ADEM, the Alabama agency responsible for enforcement of the Clean Air Act, may not amend the SIP without following the statute, which includes obtaining EPA approval of any SIP amendment.  *Sierra Club v. TVA*, 430 F.3d 1337 (11th Cir. 2005) ("*Sierra Club*").  Additionally, the pertinent provision of the SIP, Ala. Admin. Code   r.335-3-4-.01, contains no provision that a Title V permit may modify the SIP, or that, in the case of conflict between the two, the Title V permit controls.

What TVA is saying is that the 2% *de minimis* rule set out in the SIP, rejected earlier in this action by the Eleventh Circuit in *Sierra Club* because EPA's approval had not been obtained, has been replaced by the "two hour" exemption in Colbert's Title V permit. This is merely a different, new, and unsuccessful attempt to circumvent the SIP requirements that govern TVA's operation of the Colbert plant. The SIP cannot be amended by TVA's Title V permit. The "two hour" exemption in Colbert's Title V permit has a <u>lesser</u> claim to legitimacy than the 2% *de minimis* exception rejected in *Sierra Club*; the 2% *de minimis* exception at least made it into the SIP.[2] The "two hour" exemption in Colbert's Title V permit is not a safe harbor from the 20% opacity limitation in the SIP. *See Sierra Club*, *supra*.

> C. TVA's good faith, prompt corrective response, and the lack of any real and immediate threat of harm render injunctive relief inappropriate.

Court's Response - The first two grounds have already been addressed; the third ground is irreparable harm, discussed *infra*.

## II.   Considerations for the Court regarding the entry of injunctive relief

In its introduction, TVA says injunctive relief should be governed by the traditional equitable factors applied through the court's discretion.

---

[2] The 2% *de minimis* exception remains in the SIP to this day. Ala. Admin. Code r.335-3-4-.01(4).

Court's Response - The court will be guided by the following principals in the remedial proceedings.[3]

    a.    Traditional injunctive relief methodology shall apply because there is no binding authority saying the Clean Air Act mandates otherwise.

The court's remedial premise is that there has not been a ruling by the Supreme Court or the Eleventh Circuit that the Clean Air Act contains " a clear Congressional statement of intent to displace the traditional equitable power of the courts, or the traditional balancing of equities".  Absent controlling authority to the contrary, the court will conduct the remedial proceeding using "well-established principles governing the award of equitable relief".  *See Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542; 107 S.Ct. 1396, 1402; 94 L.Ed.2d 542 (1987).

> In brief, the bases for injunctive relief are irreparable injury and inadequacy of legal remedies. In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Although particular regard should be given to the public interest, "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."
>
>                         \*   \*   \*
>
> Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has

---

[3]  This is not a complete list.

intended to depart from established principles.... "Unless a statute in so
many words, or by a necessary and inescapable inference, restricts the
court's jurisdiction in equity, the full scope of that jurisdiction is to be
recognized and applied."

*Id*. (Citations omitted).

b.      The court cannot enter an injunction directing TVA to "obey the law".

Such injunctions are prohibited.  *Hughey v. JMS Development Corp*., 78 F.3d

1523 (11th Cir. 1996).

c.      Because Sierra Club has obtained judgment on liability for emissions
violations in this  citizen's suit under the CAA, there exists a rebuttable
presumption of irreparable harm and the burden of rebutting that
presumption is borne by TVA.

To the court, this is nothing more than a corollary of a., *supra*.  Judgment has

been entered against TVA for emissions violations of the Act.  It is well settled, and the

law of this case, that the CAA requires continuous compliance.  TVA has failed to

comply.[4]  Balancing the equities to require TVA to rebut a presumption of irreparable

harm places the burden on the party already found in violation of the Act.  That said,

TVA's failure to carry its evidentiary burden would not *ipso facto* lead to entry of an

injunction because, under traditional equitable principles, " . . . a court must balance

the competing claims of injury and must consider the effect on each party of the

_____

[4]  Emissions reports filed with ADEM since *Sierra Club* show the Colbert
plant, particularly Colbert 5, continues to exceed the SIP's 20% opacity limit.

7

granting or withholding of the requested relief". *Amoco Prod. Co. v. Village of Gambell, AK, supra*.

A.  Consideration of injunctive relief should await further developments.

Court's Response - It has.  The first Quarter 2008 ADEM emissions report will be available shortly.  The second Quarter 2008 ADEM emissions report will likely be in hand at the time of the hearing.  TVA said Colbert 5 was offline and undergoing work to make it a cleaner running facility, and that a six month shakedown period, ending in mid-2008, would be necessary in order to evaluate the results of the Colbert 5 work.  TVA is going to have the time it said it needed.

As to waiting for EPA to act favorably on ADEM's request to amend the SIP to make the 2% *de minimis* exception part of the SIP, the court's answer is "no".  This is a 2002 action; *Sierra Club* was issued November 22, 2005.  TVA, ADEM, and EPA have had plenty of time.

B.  Injunctive factors to be considered

1.   An injunction is an extraordinary remedy that
     never issues automatically,

Court's Response - It agrees, but the fact remains that an injunction is an appropriate remedy for Clean Air Act violations.  Due to TVA's sovereign immunity

status,[5] an injunction is the **only** remedy available to Sierra Club in this case.

> 2.     The standard for an injunction is a four - factor
>        test

Court's Response - All parties say the applicable test for injunctive relief is the

four-factor test recently summarized by the Supreme Court in *EBAY, Inc. v.*

*Mercexchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837 (2006): irreparable harm;

inadequacy of a remedy at law; balancing of the hardships between the parties, and the

impact of the injunction on the public interest.  The fact that the parties have agreed on

the applicable factors for injunctive relief eliminates the need for further discussion

about what factors apply.  Here there is no remedy at law, and the court has previously

indicated that it should be TVA's burden to demonstrate the absence of irreparable

harm.  The court anticipates that any hearing held would address any issues still

unresolved in the first, third, and fourth factors.  If there has been an intervening

decision saying that the Clean Air Act restricts the court's equitable jurisdiction, the

parties should advise the court of that decision immediately.  (The court has found

none.)

Finally, TVA discusses the tailoring of the injunction's terms, the need for

specificity in any injunction, and the need for an evidentiary hearing before the entry

---

[5]   Recognized by Judge Johnson and upheld in *Sierra Club*.

of injunctive relief.

Court's Response - The court has already spoken to the need for any injunction

to be specific and clear since the remedy is contempt.  It will not enter injunctive relief

without an evidentiary hearing.

ENTERED this the 31st day of March, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge